Exhibit A

some money, and some people had a after hours joint down the street....

THE COURT: What?

THE DEFENDANT ARTHUR MAYS: Some people had a after hours joint down the street from me, I thought it might be a quick way to get some money. So I went out to stick them up.

THE COURT: Did you have a weapon?

THE DEFENDANT ARTHUR MAYS: I had a knife.

THE COURT: A knife?

THE DEFENDANT ARTHUR MAYS: Yes-

THE COURT: And?

THE DEFENDANT ARTHUR MAYS: When I got there I asked them...I told them that I wanted to buy a drink, and when he went to get the drink I pulled the knife out. And when he came back I presented it on him, and he said, "Don't hurt me, don't hurt me." He said, "Don't hurt me or my wife."

And I said, "Won't no body get hurt if they just go along." So I ordered him to go in the bedroom. Then we started searching the house. I found the guns. So I put the knife in my pocket and pointed the guns at him, the .22 rifle and everything. It was going smooth until some people came and was knocking on the door.

And I told my brother, I said, "don't make no noise, be real quiet." And they started to make gestures to

WITNESSES:

| | | |
|---|---|---|
| WERNER STAHL | JAMES ADEE | MARVIN JOHNSON |
| A. ESPINOLA | THOMAS BOWSEN | GERALD STEWART |
| BENNIE CLEMONS | JOHN GLIDE | JACK CUNNINGHAM |
| CLARENCE GLOVER | MARK MARCIONI | MARY JARRETT |
| ROBERT HOLT | TONY TREIER | JACK KELLY |
| ELEANOR NEWKIRK | DAVID BABCOCK | LYNN MAYS |
| SARAH WOODSEN | JAMES CLARK | TOM SCHLARMAN |
| ELEANOR McBURROWS | ARTHUR MAYS | OWEN RITCHIE |
| | THOMAS PETERSON, S-1139 HOMICIDE | |

Exhibit "B"

## STATE OF MICHIGAN --- IN THE RECORDER'S COURT OF THE CITY OF DETROIT

THE PEOPLE OF THE STATE OF MICHIGAN
—vs—

(1) ARTHUR LEON MAYS

(2) BENJAMIN WILLIAMSON

Defendant(s)

DATE OF OFFENSE: December 31, 1976

LOCATION: 18615 Maine

COMPLAINANT: _____

COMPLAINING WITNESS: Sgt. Thomas Peterson

(on information and belief)

DATE WARRANT ISSUED: January 3, 1977

STATE OF MICHIGAN )
COUNTY OF WAYNE ) ss.    **INFORMATION**
CITY OF DETROIT )

OFFENSE: MURDER FIRST DEGREE - FELONY
(TWO COUNTS)

P7700089   v1

IN THE NAME OF THE PEOPLE OF THE STATE OF MICHIGAN, WILLIAM L. CAHALAN, Prosecuting Attorney in and for the said County of Wayne, State of Michigan, who prosecutes for and on behalf of the People of the State of Michigan, comes now here in said Court in the current term thereof, and gives the said Court to understand and be informed that the above-named Defendant(s), late of the said City of Detroit, heretofore on or about the DATE OF OFFENSE set forth above, at the LOCATION set forth above, in the City of Detroit, County of Wayne, State of Michigan,

COUNT I - AS TO DEFENDANT #1 AND DEFENDANT #2:

while in the perpetration or attempted perpetration of a larceny did kill and murder one JAMES CLEMONS, contrary to Sec. 750.316, MC.L.A.

COUNT II - AS TO DEFENDANT #1 AND DEFENDANT #2:

while in the perpetration or attempted perpetration of a larceny did kill and murder one LOUISE CLEMONS, Contrary to Sec. 750.316, M.C.L.A.

and against the peace and dignity of the People of the State of Michigan.

Drafted by: _Edward M. Babcock_

_William L. Cahalan_
William L. Cahalan
Prosecuting Attorney

To: DEFENSE COUNSEL. Please take notice that the People intend to use in evidence in said prosecution the following confessions and admissions obtained from defendant(s) by law enforcing officers and persons acting in cooperation with such officers.

CONFESSION BY: _____   DATE: _____

ADMISSION BY: Defendant #2/signed (Count I and 2)   DATE: January 3, 1977

No. 77 00062

ORIGINAL INFORMATION

WILLIAM L. CAHALAN, Prosecuting Attorney
Frank Murphy Hall of Justice
1441 St. Antoine, Detroit, Mich. 48226
224-5777

Exhibit "C"

## DETROIT POLICE DEPARTMENT — INVESTIGATOR'S REPORT

Homicide File #76-721 & 722
DATE: Jan 3, 1977

| IN CUSTODY YES | NO | DEFENDANT'S NAME | ADDRESS WITH ZIP CODE | AGE | SEX | RACE | D.O.B. | IDENT. NO. |
|---|---|---|---|---|---|---|---|---|
| X | ☐ | 1. ARTHUR LEON MAYS | 18640 Mackay | 22 | M | B | 1-30-54 | 305712 |
| X | ☐ | 2. BENJAMIN WILLIAMSON | ████ | 20 | M | B | | |
| ☐ | ☐ | 3. | | | | | | |
| ☐ | ☐ | 4. | P7700069 | | | | | |

OFFENSE (TO BE FILLED IN BY PROSECUTOR): ① MURDER I — Larceny  ② MURDER I — Larceny

| TIME | DATE OF OFFENSE | PLACE OF OFFENSE | DATE OF COMPLAINT | COURT FILE NUMBER | JACKET NUMBER |
|---|---|---|---|---|---|
| Btwn 8-9 AM | 12-31-76 | ████ | 1-3-77 | | 76-721 & 722 |

| COMPLAINANT'S NAME | SEX | AGE | D.O.B. | RACE | RELATION TO DEF. |
|---|---|---|---|---|---|
| JAMES CLEMONS | M | 76 | | B | Acquaint. |
| LOUISE CLEMONS | F | 66 | | B | |

OTHER PENDING CHARGES: None

PERSON TO SIGN: On Information & Belief — Sgt Thomas Peterson — Homicide
ASSISTANT PROSECUTING ATTORNEY: [signature]

Description of Offense and Investigation; include Date, Time and Circumstance of Arrest and Medical Attention administered to Officers, Defendants and Complainants. Continue on Page 2 if necessary.

1. On December 31, 1976 at approximately 8:00AM, ████ and ████ went to ████ to visit the above deceased persons. Both persons went to the side door of the dwelling, rang the doorbell and although movement was heard from within the premises, no one responded to the door. Both ████ & ████ walked to the front of the premises & re-entered their vehicle. In so doing, ████ observed a window curtain on the front door of the premises moving.

   On December 31, 1976, ████ returned to the ████ address in company with one ████ Mrs ████ knocked on the front door of the address & received no response. Both ████ phoned the police department & responding officers entered the premises & found both complainants lying face down on the kitchen floor, side by side, obviously dead. The premises appeared to have been ransacked.

   On December 31, 1976, at approximately 8:30AM, ████ of the deceased persons, looked out her ████ toward the Clemons home & observed a BM wearing a dark jacket & walking on crutches exit the Clemons home, walk to the drivers door of the Clemons car & attempt to open same. The subject re-entered the Clemons home & seconds later a second BM, tall & thin, wearing a long dark coat with a white collar and a seam up the rear of the coat exited the Clemons home, walked to the drivers door of the Clemons car, a purple and white 1972 Plymouth Duster, & attempted to open the drivers door. The subject then entered the vehicle via the passenger door & started the vehicle.

REVIEWED AND APPROVED BY: [signature]

(SIGNATURE OF INVESTIGATING OFFICER) SGT THOMAS PETERSON — Homicide Unit
(SIGNATURE OF COMMANDING OFFICER) LT ROBERT HISLOP — CO. Homicide Unit
DISTRICT OR BUREAU

①

## AFFIDAVIT OF ARTHUR LEON MAYS

STATE OF MICHIGAN)
)ss
COUNTY OF MACOMB)

**Arthur Leon Mays**, being first duly sworn, states:

1. I am the defendant in the above matter.
2. I asked substitute counsel Mr. Raymond McDonald the where-abouts of my retained counsel Mr. Charles Campbell. Mr. McDonald informed Defendant that Mr. Campbell was not available that he would take care things.
3. I informed substitute counsel I wanted to withdraw my plea because I was not guilty and had told Mr. Campbell the same thing.
4. I thought the court was asking me did I have anything to say concerning the dialog concerning the plea agreement when I answered I had nothing to say.
5. I had nothing to say concerning the dialog of substitute counsel and the court.
6. Had I the opportunity to address the court I would have told the judge I wanted to withdraw my plea because I was not guilty.
7. I told the pre-sentence investigator I was not guilty.
8. Substitute counsel informed me I could not withdraw my plea at that stage.
9. I am innocent of the charges I stand convicted of.
10. I have read the Delayed Motion for Resentencing, and Brief in support of that motion, I know the contents of those documents, and the facts stated therein are true to the best of my knowledge, information and belief.

_____
Mr. Arthur Leon Mays

Subscribed and sworn to before me
this ___16Th___ day of March, 1999

_____
Notary Public
County, _Lapeer_
My Commission Expires: _4/25/2002_

BARRY CARLTON CLARDY
Notary Public, Lapeer County, MI.
My Commission Expires 4/25/2002

Arthur Leon Mays
F-70989
Page 1   Section III

Exhibit "E"

Statement of Offense:   See attached police report.

Defendant's Statement:

"I have no knowledge of the crime other than what the police told me and what I read in the paper. I had no knowledge of the people other than that they were Mr. & Mrs. Clemons and that they lived on Main, which is the next street. I didn't know them personally."

/S/ Arthur Mays

Juvenile Record:

No official juvenile record.

Adult Criminal Record:

The Defendant has one misdemeanor and no felony convictions on his adult criminal record. The misdemeanor is Miscellaneous Ordinance (Possession of Narcotics Paraphernalia). On 3/9/73 the Defendant was given $50 or 7 days in the Detroit House of Correction. The Defendant has three traffic offenses on his adult criminal record.

Personal History:

Arthur Leon Mays was born on 1/30/54 in Detroit, Michigan. He is a 23 year old man whose family fondly calls him "ducky". He is the son of Katie Hayes (nee Mays), age 46, and Benjamin Williamson, deceased. The Defendant's mother has been married three times. The first of which she was married to the Defendant's father. Her second marriage was to Maurice Greene, and her third marriage, which occurred in 1975, is to one Thomas Hayes. The Defendant alleges that his mother divorced his father when he was approximately 7 or 8 years of age. She is presently a housewife. She is supported by her husband who is a carpenter. The Defendant was 22 years of age when his father died of a heart attack. The Defendant's father had worked at Chevrolet for the last 26 years. The Defendant's mother allegedly divorced the Defendant's father because "she wanted to be with another man." The Defendant's mother divorced her second husband because he was very jealous and he allegedly used to beat the Defendant's mother. The Defendant grew up with his grandparents after his parents divorced. He was virtually raised by them. The Defendant's mother allegedly raised the rest of the children but the Defendant stated he lived with his grandparents because he preferred to. The Defendant states his childhood was not too violent and that he got along with people and grew up in the neighborhood that he now lives in. He states that his childhood was happy. The Defendant has seven real brothers and sisters and two half-sisters. They are: Diane (? nee Williamson) age 23, who lived in Ohio; Angela Hayden, age 24, who works for Montgomery Ward, has two children, and is married; Louise Williamson, age 22, who lives with the Defendant's grandmother, has no children, and is supported by welfare; Terrence Williamson, age 19, who is unemployed and lives with the Defendant's mother; Quincy Williamson, age 18, who is presently in Boys Training School; Denise Williamson, age 17, who presently lives

Exhibit F

Arthur Leon Mays
F-70989
Page 2    Section I

Defendant was raised by his grandparents after his parents divorced which occurred when he was approximately 7 or 8 years of age. The Defendant's grandparents are Lilla and Arthur Mays, ages 57 and 60 respectively. Both are retired and supported by social security and live next door to the Defendant and his wife. The Defendant is married to one Lynn Mays. They have a son, Arthur Mays, Jr. age 2. The Defendant states that his health is good however, he is highly nervous. The Defendant alleges that he smokes marijuana approximately once a month and rarely drinks alcohol. He has never used any illegal pills however, he states he started using heroin in 1973. The most expensive his heroin habit ever became was $30 or $40 per day. After heroin usage, for a period of one year, the Defendant entered a methadone clinic where he has spent the last three years but has never detoxed. He quit going to the methadone clinic just before he became incarcerated for the within case. The Defendant alleges that he paid for his habit, first by a job and then by "hustling." (i.e. shoplifting, etc.). Because the Defendant felt he did not want to hustle anymore, he entered the clinic. The Defendant states he presently feels that he will never use heroin again. The Defendant was unemployed at the time of the within offense and was supported by $156 every two weeks in the form of general assistance. The Defendant worked for six months in 1974 and one year in 1972. These are the only employment opportunities that the Defendant has ever taken advantage of. The Defendant completed the 9th grade at Nolan Jr. High School and quit because he was very behind and over age.

<u>Concerning the within offense, the Defendant alleges that he did not commit the murders of Mr. and Mrs. Clemons and did not know who did it. He does not appear to be bitter.</u> He appears to be of normal intelligence and appeared at the time of the interview to be very sincere. He stated he pled guilty at the time of the within offense because "they worked on my family." This writer also had the opportunity to interview the co-defendant, Benjamin Williamson who is also the real brother of the Defendant. Benjamin gives a totally different story and states that Arthur shot Mr. and Mrs. Clemons to death. Benjamin stated that he had gone to the Clemons home with Arthur to buy some liquor when Arthur pulled out a knife and began holding up the two deceased complainants. Arthur, thereupon, got the shotgun of the complainants and told them to lie face down. He told Benjamin to get the keys according to Benjamin's story of the car of the Clemons' and sit inside. Benjamin did so and at this time Benjamin feels that the two complainants were shot to death. Benjamin states that Arthur then came out of the house with something wrapped up in a blanket. The police reports indicates that Benjamin went inside the house because he could not open the door to the car. He then returned again with Arthur who opened up the passenger side of the car and they drove off. We talked to one, Sgt. Thomas Peterson, of the Homicide Unit of the Detroit Police Department who is in charge of this case mainly because the evidence and the statements of the two Defendants were not listed in the police report. Sgt. Peterson stated that they found the murder weapon at the time of the arrest in the basement of Arthur Mays.

# Detroit Police Department

## CONSTITUTIONAL RIGHTS CERTIFICATE OF NOTIFICATION

ARTHUR MAYS

Exhibit "G"

I understand that:

1. I have a right to remain silent and that I do not have to answer any questions put to me or ma[ke] statements.

2. Any statement I make or anything I say can be used against me in a Court of Law.

3. I have the right to have an attorney (lawyer) present before and during the time I answ[er] questions or make any statement.

4. If I cannot afford an attorney (lawyer), one will be appointed for me without cost by the [court] prior to any questioning.

5. I can decide at any time to exercise my rights and not answer any questions or make any stat[ement].

I understand that these are my rights under the Law. I have not been threatened or promised anythin[g]. I now desire and agree to answer any questions put to me or to make a statement.

In the presence of:

**WITNESS:** Sgt. Marvin Johnson

**SIGNATURE:** X Refused

**DATE:** 1-3-77    **TIME:** 1:20 AM

☐ This certificate of notification was read to the suspect, and he/she had an opportunity to read it. F[urther] the suspect was given an opportunity to ask any questions that he/she might have concerning th[e cer]tificate and his/her rights.

☐ Suspect is illiterate. He/she has had the rights under the law, as defined above, explained to him/h[er and] has agreed to answer questions or make a statement.

☐ Suspect can read and write. The rights, as defined above, have been explained to him/her, and [he/she] has agreed to make a voluntary statement but has refused to sign this certificate.

**REMARKS:** Refused to sign, and refused to make a statement.

**DATE**     **TIME**     **OFFICER**     **D.P.D**

**PLACE**     **OFFICER**     **D.P.D**

Form C of D-78-CE (Rev. 3-69)    D.P.D. 342-B

55

Exhibit "H"

## STATE OF MICHIGAN
### IN THE RECORDER'S COURT FOR THE CITY OF DETROIT

PEOPLE OF THE STATE OF MICHIGAN

vs.

ARTHUR MAYS
_____
Defendant

File No. 77 00062

TO THE CLERK OF SAID COURT

Please enter my appearance as RETAINED COUNSEL for

Defendant, Arthur Mays
_____

defendant in the above cause.

Yours, etc.

CHARLES CAMPBELL/CAMPBELL & MACDONALD
_____
Attorney for Defendant

Detroit, June 9, 1977

P
R
I
N
T

Name   Charles Campbell
Address   3315 Cadillac Tower, Detroit 48226
Telephone   964-2727
Michigan State Bar No.   P-11537

APPEARANCE BY RETAINED COUNSEL
RC Form #17

Form C of D-4-PR (Rev. 11-73)

Exhibit I

STATE OF MICHIGAN

IN THE RECORDER'S COURT FOR THE CITY OF DETROIT

THE PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff,

v

                                        Recorder's Court
                                        Case No. 77-0062-02

ARTHUR L. MAYS,                    Hon. Bruce U. Morrow

    Defendant.
_____/

## ORDER

At a session of said court held in the Frank Murphy Hall of Justice on **DEC 0 9 1996**

PRESENT: HONORABLE **HON. BRUCE U. MORROW**
                               Recorder's Court Judge

Defendant's Motion for Re-sentencing has been considered.

**IT IS HEREBY ORDERED** that defendant's Motion for Re-sentencing is **denied** because the Court is not persuaded that relief should be granted. Defendant raises arguments which have already been adjudicated. Notwithstanding this flaw, defendant's substantive arguments are without merit.

Therefore, upon reading the pleadings, reviewing the record, applicable law, and the Court being fully advised on the premises, this Court finds that the sentence as imposed is valid and the Court may not modify a valid sentence after it has been imposed except as provided by law. MCR 6.429(A). The Court will **deny** defendant's Motion for Re-sentencing.

                                                        _/s/ Bruce U. Morrow_
                                                        Recorder's Court Judge

Exhibit J

STATE OF MICHIGAN
IN THE THIRD JUDICIAL CIRCUIT COURT
CRIMINAL DIVISION

THE PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff,

v

                                                      **Criminal Division**
                                                      Case No. 77-00062

                                                      Hon. Bruce U. Morrow

ARTHUR MAYS,

    Defendant.
_____/

## ORDER

AT A SESSION OF SAID COURT HELD IN THE FRANK MURPHY HALL OF JUSTICE ON **NOV 25 1998**

PRESENT: HONORABLE   **HON. BRUCE U. MORROW**
                                       Circuit Court Judge

Defendant has filed a Second Motion to Withdraw Guilty Plea. This Court denied defendant's previous motion on December 9, 1996. Defendant has not shown that the previous order was clearly erroneous, and has failed to demonstrate any retroactive change in the law on the issues previously adjudicated. MCR 6.508(D)(2).

    **IT IS HERBY ORDERED** that defendant's Motion to Withdraw Guilty Plea is **DENIED**.

                                                                     /s/ Bruce U. Morrow
                                                                     Circuit Court Judge

## IN THE MICHIGAN COURT OF APPEALS

ORDER  Exhibit "K"

Re: **People of MI v Arthur Mays**
Docket No. **223808**
L.C. No. **77-000062**

      Richard A. Bandstra, Chief Judge, acting under MCR 7.203(F)(1) and MCR 7.216(A)(10), orders:

      The motion to waive fees is GRANTED for this case only.

      The delayed application for leave to appeal is DISMISSED for lack of jurisdiction. MCR 6.502(G)(1) prohibits the defendant from appealing an order denying a second motion for relief from judgment where a previous motion for relief from judgment filed after August 1, 1995, has already been denied. The second motion for relief from judgment did not involve either a retroactive change in the law or newly discovered evidence. Cases cited by defendant do not support the conclusion that MCR 6.502(G) cannot be applied when a defendant's conviction and direct appeal occurred prior to October 1, 1989. Because the defendant was provided notice prior to August 1, 1995, that any motion filed after August 1, 1995, would have to include all remaining issues, no retroactive change in the law prevented defendant from filing two motions for relief from judgment after August 1, 1995.



A true copy entered and certified by Carl L. Gromek, Chief Clerk, on

FEB 1 6 2000
_____    _____
Date                                                    Chief Clerk